UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENNIS KING and TRICIA KING, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>GARFIELD COUNTY PUBLIC HOSPITAL DISTRICT NO. 1, a municipal corporation, et al.,<br><br>Defendants. | NO: 12-CV-0622-TOR<br><br>ORDER GRANTING DEFENDANT QCL'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant QCL, Inc.'s Motion to Dismiss Pursuant to FRCP 12(b)(6) (ECF No. 39). This matter was submitted for consideration without oral argument. The Court has reviewed the briefing and the record and files herein, and is fully informed.

//

//

//

BACKGROUND

This case concerns a hospital employee's termination for alleged drug diversion and use after the employee tested positive in a drug test. Plaintiff Dennis King sued his former employer Garfield County Hospital District No. 1, as well as companies allegedly involved in the drug test. One of those companies, QCL, Inc., now moves for dismissal of the claims against it pursuant to Fed. R. Civ. P. 12(b)(6).

FACTS[1]

Plaintiff Dennis King ("King") is a registered nurse who was employed full-time by Garfield County Hospital District No. 1 ("GCHD") from March 2, 2007, until March 29, 2011. After a dental procedure, King was prescribed and was taking Tylenol with codeine. After King's shift on February 7, 2011, a narcotics count was performed and there were no discrepancies. On the following day—one of King's days off—the narcotic count revealed an additional 19ml of liquid in the morphine bottle. GCHD sent the bottle back to the manufacturer without testing.

On February 11, 2011, GCHD staff required King to take a urine drug test without any prior warning. This was one of King's regularly scheduled days off,

---

[1] These facts are drawn from Plaintiff's complaint and are accepted as true for the purposes of the instant motion.

and he had taken a prescription Tylenol with codeine approximately one hour before the test. King informed the test technician that he had ingested Tylenol with codeine. The test came back positive for codeine and morphine. King was informed on February 18, 2011, that he had "extremely high levels of morphine" in his urine. He again informed a GCHD staff member that he had a valid prescription for Tylenol with codeine. On February 22, 2011, King, GCHD staff and Defendant Dr. Terrence McGee had a phone meeting about his positive test results. On March 28, 2011, Dr. McGee reported to GCHD that King had a positive finding for codeine and morphine; the next day, King was terminated from his employment with GCHD based on allegations of substance abuse.

At an unemployment hearing conducted by the Washington State Employment Security Division, Dr. McGee testified in support of GCHD and its staff's assertions that King had been terminated based on suspected drug diversion and use, as well as testifying that King may have developed a tolerance for opioids. However, the unemployment hearing examiner failed to establish that King was terminated for misconduct. The Nursing Care Quality Assurance Commission ("NQAC"), to which GCHD had reported King, likewise determined that the evidence did not support allegations of drug diversion and substance abuse. Despite this, King has not been able to find full-time employment as a nurse since his termination from GCHD.

In December 2012, King sued defendants GCHD, hospital staff members, and Dr. McGee in this Court, alleging, *inter alia*, violation of constitutional rights, defamation, and negligence. The hospital defendants counterclaimed under RCW 4.24.510, Washington's Anti-SLAPP statute. On July 16, 2013, Plaintiffs amended their complaint pursuant to the parties' stipulation (ECF No. 24). On September 29, 2013, this Court granted Plaintiffs' motion to file a second amended complaint (ECF No. 33), adding QCL, Inc., and OHS Health & Safety Services, Inc. King alleges that Defendant QCL, Inc., was the laboratory which processed the urine drug test, and that Defendant OHS Health & Safety Services, Inc., and Defendant Dr. McGee were responsible for interpreting the urine drug tests. Specifically, Plaintiffs' Second Amended Complaint states that

> Defendant QCL, Inc., is a for profit Washington Corporation doing business, at all times relevant herein, within Garfield County, State of Washington.
> …
>
> QCL, Inc., was the laboratory who processed the urine drug test in conjunction with GCHD.
> …
>
> QCL, Inc., was responsible for processing the urine drug test samples from GCHD employees on February 11, 2011.
> …
>
> QCL, Inc., OHS Health & Safety Services, Inc., Dr. McGee, and GCHD owed Mr. King a duty to follow the accepted standard of care in performing the testing, conducting the analysis, and interpreting the urinalysis.

QCL, Inc., OHS Health & Safety Services, Inc., Dr. McGee, and GCHD breached their duty to follow the accepted standard of care performing the testing, conducting the analysis, and interpreting the urinalysis.

Dr. McGee negligently interpreted the urinalysis results as positive.

Dr. McGee's negligence caused Mr. King substantial damages…

ECF No. 33 at 4, 6, 8, 18-19.

In the motion now before the Court, Defendant QCL requests dismissal of the claims against it pursuant to Fed. R. Civ. P. 12(b)(6) on grounds that Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted.

DISCUSSION

**A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

Defendant QCL argues that the claims against it should be dismissed because Plaintiffs' Second Amended Complaint fails to allege how any duty owed by QCL was breached or what damages were caused by the alleged breach. ECF No. 39 at 5. Plaintiffs contend that QCL's motion to dismiss should be denied because "[d]iscovery has evidenced that QCL, Inc.,…played a central role in the drug test as it conducted the test and arranged its analysis and interpretation through entities of its choosing" and because "[d] iscovery has further revealed a relationship between Dr. McGee and QCL, including Dr. McGee testifying that he worked for QCL. ECF No. 46 at 4-5. Plaintiffs argue that the discovery requests

propounded to Dr. McGee were outstanding at the time Plaintiffs filed their Proposed Second Amended Complaint. *Id*. at 7. They argue that the scope of the relationship between QCL, OHS and Dr. McGee needs to be better defined, but that that QCL would be liable for the actions of its agents, including OHS and Dr. McGee. *Id*.

A motion to dismiss for failure to state a claim tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will not do." *Id.* at 555, 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint must also contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555). In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled. The court should generally draw all reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it need not accept "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

In ruling upon a motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the party opposing the motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. *Id.* The court may also disregard conclusory allegations and arguments which are not supported by reasonable deductions and inferences. *Id.*

The essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury. *Pedroza v. Bryant*, 101 Wash. 2d 226, 228 (1984).

Here, Plaintiffs' Second Amended Complaint fails to state a cause of action against QCL. The factual allegations in Plaintiffs' complaint mention only that

"QCL, Inc., was responsible for processing the urine drug samples collected from GCHD employees on February 11, 2011" and the "QCL, Inc., was the laboratory who processed the urine drug test in conjunction with GCHD." ECF No. 33 at 6, 8-9. It does not indicate what actions QCL took that breached its duty to King. Nor does Plaintiffs' contention that QCL owed King a duty to follow the accepted standard of care in testing, analyzing and interpreting the urinalysis, and that it breached that standard cure the deficiency. *Id*. at 18-19. A mere conclusion that QCL breached its duty is insufficient; "[n]aked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will not do." *Twombly*. 550 U.S. at 555, 557.

Insofar as Plaintiffs' rely on the argument that "a legal relationship between QCL, OHS, and Dr. McGee will give rise to liability," ECF No. 46 at 5, the Court notes that they make no such contention in their Second Amended Complaint. Plaintiffs allege that "[i]nitially, Dr. McGee treated Mr. King's urine test results as negative based on the fact that Mr. King had a valid prescription for Tylenol #3 (with codeine)," but that "[a]fter GCHD informed Dr. McGee of its suspicion of drug diversion…Dr. McGee changed his initial findings regarding King's urinalysis from negative to positive." ECF No. 33 at 10-11. Generously construed, Plaintiffs seem to be arguing that Dr. McGee was negligent in his interpretations. But nowhere does the Second Amended Complaint allege that Dr. McGee works

for or is associated with QCL. As QCL notes, liability under agency and negligent hiring are new theories, not pleaded in the Second Amended Complaint. Thus, their allegations against Dr. McGee do not give rise to liability for QCL.

Accordingly, the Court finds that Plaintiffs' Second Amended Complaint does not contain "enough facts to state a claim to relief that is plausible on its face" as required to survive a motion to dismiss pursuant to Rule 12(b)(6). *See Twombly*, 550 U.S. at 570. The Court then considers whether Plaintiffs may amend their complaint again.

**B. Leave to Amend**

In its response to Defendant QCL's motion, Plaintiffs ask that if the Court is inclined to grant QCL's motion to dismiss, they request leave from the Court to Amend the Second Amended Complaint to plead with more particularity and specificity the facts obtained through discovery that establish QCL's liability. ECF No. 46 at 8. QCL replies that Plaintiffs' request to amend is governed by the "good cause" standard of Rule 16, and Plaintiffs have not been diligent in seeking to amend as required under that rule. *Id*. It argues that Plaintiffs' counsel's declaration establishes that they had the discovery materials they have now provided to the Court on August 28, 2013, when they filed their proposed Second Amended Complaint, and did not establish that any new information was received when Dr. McGee's formal discovery responses were received on September 26,

2013. *Id*. at 9. QCL contends that even if there was new information, Plaintiffs have made no attempt to amend their Second Amended Complaint prior to their response to QCL's motion to dismiss. *Id*.

As a preliminary matter, the Court notes that the case QCL cites in support of its proposition that Rule 16 supplies the proper standard for amendment after entry of the scheduling order, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992), does not concern leave to amend after dismissal pursuant to 12(b)(6). *See U.S. v. Corinthian Colleges*, 655 F.3d 984 (on motion to dismiss pursuant to 12(b)(6) used a generous standard rather than Rule 16's "good cause" standard for whether to grant leave to amend). Rather, the Ninth Circuit has repeatedly instructed district courts to "grant leave to amend even if no request to amend the pleading was made, unless ... the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The standard for granting leave to amend is generous—the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether leave to amend is appropriate, a court must consider the following five factors: bad faith, undue delay, whether the plaintiff has previously amended the complaint, prejudice to the opposing party, and futility of amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

Here, though a close question, the factors and the generous standard of Rule 15 swing in favor of allowing amendment. First, the Court finds no evidence of bad faith. Nor is there evidence of significant delay. Plaintiffs' counsel, Jeffrey Galloway, acknowledges that "discovery received from Defendants GCHD and Dr. McGee showed a relationship existed between GCHD, QCL, OHS, and Dr. McGee" at the time they filed their Second Amended Complaint, though they did not know the full extent of the relationship. ECF No. 47 at 2.

Though Plaintiffs have amended the Complaint twice already, the Second Amended Complaint is the first to include QCL as a defendant; thus, Plaintiffs have not yet had a chance to cure deficiencies relating to that defendant.

Third, Defendant QCL claims that it will suffer prejudice if Plaintiffs are allowed to amend a third time. QCL contends that allowing Plaintiffs to amend would add new theories of liability, which, given the late stage of the proceedings would be very burdensome, as Defendant's expert disclosures are due December 30, 2013, and the discovery cutoff is February 10, 2014. *Id*. at 11. This factor, then, does not weigh in favor of allowing amendment.

The Court lastly looks to whether amendment would be futile. Under futility analysis, "[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ.*, 616 F.3d 963, 972

(9th Cir.2010) (internal citation and quotation marks omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks and citation omitted)); *Balistreri*, 901 F.2d at 701 (noting that leave to amend should be granted when a court can "conceive of facts" that would render the plaintiff's claim viable). Leave to amend is warranted if the deficiencies can be cured with additional allegations that are "consistent with the challenged pleading" and that do not contradict the allegations in the original complaint. *Corinthian Colleges*, 655 F.3d at 995 (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir.1990)).

To state a cause of action against QCL, Plaintiffs must allege facts to sufficiently support a finding of QCL's negligence or that there was a relationship between a negligent party and QCL that would give rise to its liability. Plaintiffs allege in their response to QCL's motion to dismiss that a legal relationship between QCL, OHS, and Dr. McGee will give rise to liability, suggesting that QCL was the principal and Dr. McGee was the agent. ECF No. 46 at 5, 7. "'Before the sins of an agent can be visited upon his principal, the agency must be first established.'" *Stansfield v. Douglas Cnty.*, 107 Wash. App. 1, 17, 27 P.3d 205, 215 (2001) (quoting *Matsumura v. Eilert*, 74 Wash.2d 362, 363 (1968). Under Washington law, an agency relationship is created, either expressly or by

implication, when one party acts at the instance of and, in some material degree, under the direction and control of another. *Id*. (internal quotation omitted). Consent and control are the essential elements of the relationship. *Id.*

In support of its allegations of a relationship between QCL and Dr. McGee, Plaintiff provides a letter from Dr. McGee to Michelle Smith of QCL, produced in discovery. ECF No. 47, Exhibit A, p. 14. This letter establishes that there was a relationship between McGee and Smith, as it concerns the results of King's urinalysis. Dr. McGee is reporting to Smith his interpretation of the test; Dr. McGee is providing his professional opinion to Smith in the letter. Though slight, it indicates that he is reporting to Smith or in her employ in some way. Likewise, Mr. Galloway also declared that Dr. McGee testified before the Washington State Employment Security Department that he worked for QCL.

Accordingly, the Court allows Plaintiffs to file an amended complaint within 15 days of entry of this order which sufficiently pleads facts giving rise to QCL's liability, if any.

///

**IT IS HEREBY ORDERED:**

Defendant QCL, Inc.'s Motion to Dismiss Pursuant to FRCP 12(b)(6) (ECF No. 39) is **GRANTED**. The claims as pled against Defendant QCL in the Second Amended Complaint are dismissed without prejudice and **subject to Plaintiffs'**

**right to file and serve a Third Amended Complaint** within 15 days of entry of this order. The Court will only entertain Defendant QCL's motion to adjust the scheduling order after Plaintiffs have filed their Third Amended Complaint, if any. In the meantime, QCL is relieved of its obligation to file its expert disclosures due December 30, 2013.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** December 27, 2013.

THOMAS O. RICE
United States District Judge