UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENNIS KING and TRICIA KING, husband and wife,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GARFIELD COUNTY PUBLIC HOSPITAL DISTRICT NO. 1, a municipal corporation, et al.,<br><br>                    Defendants. | NO:  12-CV-0622-TOR<br><br>ORDER DENYING DEFENDANT OHS'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant OHS Health & Safety Services, Inc.'s Motion to Dismiss Pursuant to Rule 12(c) (ECF No. 57). This matter was submitted for consideration without oral argument.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

BACKGROUND

This case concerns a hospital employee's termination for alleged drug diversion and use after the employee tested positive in a drug test. Plaintiff Dennis

ORDER DENYING DEFENDANT OHS'S MOTION TO DISMISS ~ 1

King sued his former employer, Garfield County Hospital District No. 1, as well as companies allegedly involved in the drug test. In the motion now before the Court, one of those companies, OHS Health & Safety Services, Inc. ("OHS"), moves to dismiss the Second Amended Complaint for Damages against it. For the reasons explained below, the Court denies Defendant OHS's motion.

FACTS[1]

Plaintiff Dennis King ("King") is a registered nurse who was employed full-time by Garfield County Hospital District No. 1 ("GCHD") from March 2, 2007, until March 29, 2011. After a dental procedure, King was prescribed and was taking Tylenol with codeine. After King's shift on February 7, 2011, a narcotics count was performed and there were no discrepancies. On the following day—one of King's days off—the narcotic count revealed an additional 19ml of liquid in the morphine bottle. GCHD sent the bottle back to the manufacturer without testing.

On February 11, 2011, GCHD staff required King to take a urine drug test without any prior warning. This was one of King's regularly scheduled days off, and he had taken a prescription Tylenol with codeine approximately one hour before the test. King informed the test technician that he had ingested Tylenol with

[1] These facts are drawn from Plaintiff's complaint and are accepted as true for the purposes of the instant motion.

ORDER DENYING DEFENDANT OHS'S MOTION TO DISMISS ~ 2

codeine. The test came back positive for codeine and morphine. King was informed on February 18, 2011, that he had "extremely high levels of morphine" in his urine. He again informed a GCHD staff member that he had a valid prescription for Tylenol with codeine. On February 22, 2011, King, GCHD staff and Defendant Dr. Terrence McGee had a phone meeting about his positive test results. On March 28, 2011, Dr. McGee reported to GCHD that King had a positive finding for codeine and morphine; the next day, King was terminated from his employment with GCHD based on allegations of substance abuse.

At an unemployment hearing conducted by the Washington State Employment Security Division, Dr. McGee testified in support of GCHD and its staff's assertions that King had been terminated based on suspected drug diversion and use, as well as testifying that King may have developed a tolerance for opioids. However, the unemployment hearing examiner failed to establish that King was terminated for misconduct. The Nursing Care Quality Assurance Commission ("NQAC"), to which GCHD had reported King, likewise determined that the evidence did not support allegations of drug diversion and substance abuse. Despite this, King has not been able to find full-time employment as a nurse since his termination from GCHD.

In December 2012, King sued Defendants GCHD, hospital staff members, and Dr. McGee in this Court, alleging, *inter alia*, violation of constitutional rights,

ORDER DENYING DEFENDANT OHS'S MOTION TO DISMISS ~ 3

defamation, and negligence. The hospital Defendants counterclaimed under RCW 4.24.510, Washington's Anti-SLAPP statute. On July 16, 2013, Plaintiffs amended their complaint pursuant to the parties' stipulation (ECF No. 24). On September 29, 2013, this Court granted Plaintiffs' motion to file a second amended complaint (ECF No. 33), adding QCL, Inc., and OHS Health & Safety Services, Inc. King alleges that Defendant QCL, Inc., was the laboratory which processed the urine drug test, and that Defendants OHS and Dr. McGee were responsible for interpreting the urine drug tests. Specifically, Plaintiffs' Second Amended Complaint states that

> Upon information and belief, Defendant OHS Health & Safety Services, Inc., is a for profit California Corporation doing business, at all times relevant herein, within Orange County, State of California.
> …
>
> Mr. King was not provided any of the documentation or evidence relied upon by Dr. McGee, even after repeated requests.
>
> Initially, Dr. McGee treated Mr. King's urine test as negative based upon the fact that Mr. King had a valid prescription for Tylenol #3 (with codeine).
>
> After GCHD informed Dr. McGee of its suspicion of drug diversion based on no other positive tests, Dr. McGee changed his initial findings regarding Mr. King's urinalysis from negative to positive.
> …
>
> Dr. McGee improperly relied upon the urine concentration to quantify morphine intake. The analysis must focus on the ratio of codeine to morphine, which was consistent with a prescription for Tylenol #3 (with codeine) in this case.

ORDER DENYING DEFENDANT OHS'S MOTION TO DISMISS ~ 4

On March 29, 2011, Mr. King was terminated from his employment with GCHD based on allegations of substance abuse.

…

Dr. McGee testified that Mr. King's urine drug test results produced elevated levels of codeine and morphine. He also testified that the levels of codeine and morphine in Mr. King's urine would not result from one tablet of Tylenol #3 (with codeine).

…

Upon information and belief, OHS Health & Safety Services, Inc., and Dr. McGee were responsible for interpretation of the urine drug tests.

…

QCL, Inc., OHS Health & Safety Services, Inc., Dr. McGee, and GCHD owed Mr. King a duty to follow the accepted standard of care in performing the testing, conducting the analysis, and interpreting the urinalysis.

QCL, Inc., OHS Health & Safety Services, Inc., Dr. McGee, and GCHD breached their duty to follow the accepted standard of care performing the testing, conducting the analysis, and interpreting the urinalysis.

Dr. McGee negligently interpreted the urinalysis results as positive.

Dr. McGee's negligence caused Mr. King substantial damages…

Defendants are liable to Plaintiff as a result of their breach of duty.

GCHD, as a principal, is liable for the actions of its ostensible agent, Dr. McGee.

Upon information and belief, Dr. McGee has an employment and/or agency relationship with OHS & Safety Services, Inc.

ECF No. 33 at 4, 9-14, 18-19.

On December 27, 2013, the Court granted Defendant QCL's motion to dismiss for failure to state a claim and terminated Defendant QCL subject to Plaintiffs' right to file and serve a third amended complaint within 15 days. ECF

ORDER DENYING DEFENDANT OHS'S MOTION TO DISMISS ~ 5

No. 56 at 12-13. Plaintiffs, however, did not file a third amended complaint within 15 days.

Defendant OHS now requests dismissal of the claims against it pursuant to Fed. R. Civ. P. 12(c) on grounds that Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted.

DISCUSSION

**A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c)**

A Rule 12(c) motion for judgment on the pleadings is properly granted where, accepting as true allegations of fact in the complaint, construed in the light most favorable to the non-moving party, "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009). When a Rule 12(c) motion is used to raise a defense of failure to state a claim, a motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6). *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988). A motion to dismiss for failure to state a claim tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will

not do." *Id.* at 555, 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff is not required to establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint must also contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled. The court should generally draw all reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it need not accept "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

"The essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury." *Pedroza v.*

*Bryant*, 101 Wash. 2d 226, 228 (1984). In Washington, a principal is liable for the negligent acts of its agent when the agent acts on behalf of the principal and within the scope of employment. *Scott v. Ross*, 140 F.3d 1275, 1280 (9th Cir. 1998).

Here, Plaintiffs' allegations against OHS depend primarily on two contentions: (1) that OHS interpreted the drug results, ECF No. 33 at 9 ("Upon information and belief, OHS Health & Safety Services, Inc., and Dr. McGee were responsible for interpretation of the urine drug tests."); and (2) that OHS and Dr. Terrence McGee[2] have an agency or employment relationship, ECF No. 33 at 19 ("Upon information and belief, Dr. McGee has an employment and/or agency relationship with OHS & Safety Services, Inc."). Thus, the Court must determine whether Plaintiff has stated facts to support a finding that OHS negligently interpreted the test results or that Dr. McGee was negligent and such negligence may be imputed to OHS because of an agency or employment relationship.

Defendant contends that the complaint contains no factual allegations as to how OHS owed any to Plaintiffs; what breach occurred, including any actions OHS took in performing any testing, conducting any analysis, or interpreting any analysis; or what damages were caused by the alleged breach. ECF No. 57 at 4, 6. Plaintiff responds that it has sufficiently pleaded facts showing Dr. McGee

---

[2] Dr. McGee is also named as a Defendant in this action.

ORDER DENYING DEFENDANT OHS'S MOTION TO DISMISS ~ 8

negligently interpreted the results of Mr. King's drug tests, and that because Dr. McGee is the agent of OHS, his acts are also the acts of OHS. ECF No. 71 at 6-7.

Plaintiffs have adequately pleaded their claim that OHS and Dr. McGee have an agency/employment relationship, and they have adequately pleaded allegations of Dr. McGee's negligence. The factual recitation in the complaint states that OHS and Dr. McGee "were responsible for interpretation of the urine drug tests." ECF No. 33 at 9. As Plaintiffs note, Defendants acknowledge that the Second Amended Complaint makes detailed factual allegations against Dr. McGee. ECF No. 57 at 2-3. These include allegations that "Dr. McGee and GCHD improperly relied upon the urine concentration to quantify morphine intake. The analysis must focus on the ratio of codeine to morphine, which was consistent with a prescription for Tylenol #3 (with codeine) in this case." ECF No. 33 at 11. Plaintiffs further claim that he was "terminated from his employment with GHCD based on allegations of substance abuse" after "Dr. McGee changed his initial findings regarding King's urinalysis from negative to positive." *Id.* at 10-11.  The Second Amended Complaint also clearly states that "OHS Health & Safety Services, Inc., [and] Dr. McGee…owed Mr. King a duty to follow the accepted standard of care in performing the testing, conducting the analysis, and interpreting the urinalysis." ECF No. 33 at 18-19. And the Second Amended Complaint makes a clear claim that Dr. McGee had an agency or employment relationship with OHS.

ECF No. 33 at 19. Thus, Plaintiffs have linked liability from Dr. McGee to OHS; they have stated that there was a duty that Dr. McGee breached, and that Dr. McGee had an agency/employment relationship with OHS. These are not "naked assertions devoid of further factual enhancement" or defendant-unlawfully-harmed-me accusations. Taken in the light most favorable to Plaintiffs, the Second Amended Complaint survives OHS's motion to dismiss.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant OHS Health & Safety Services, Inc.'s Motion to Dismiss Pursuant to Rule 12(c) (ECF No. 57) is **DENIED**. The Court will entertain Defendant OHS's timely motion to adjust the scheduling order, if any.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** April 10, 2014.

THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANT OHS'S MOTION TO DISMISS ~ 10