UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENNIS KING and TRICIA KING, husband and wife,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>GARFIELD COUNTY PUBLIC HOSPITAL DISTRICT NO. 1, a municipal corporation, et al.,<br><br>　　　　　　Defendant. | NO: 12-CV-0622-TOR<br><br>ORDER DENYING MOTION FOR RECONSIDERATION |

BEFORE THE COURT is Defendants Garfield County Public Hospital District No. 1, Susan Morrow, Andrew Craigie, and Michele Beehler's Motion for Reconsideration (ECF No.102). This matter was submitted for consideration without oral argument and according to the Court's scheduling order, ECF No. 15 at 7, without a response from Plaintiff. The Court has reviewed the briefing and the record and files herein, and is fully informed.

///

ORDER DENYING MOTION FOR RECONSIDERATION ~ 1

BACKGROUND

This case concerns a hospital employee's termination for alleged drug diversion and use after the employee tested positive in a drug test. Plaintiff Dennis King sued his former employer, Garfield County Hospital District No. 1 and hospital employees (collectively, "GCHD"), as well as a company and physician allegedly involved in the drug test. The Court granted in part and denied in part GCHD's motion for summary judgment. In the motion now before the Court GCHD seeks reconsideration of the Court's denial of its request for summary judgment on Plaintiff's Fourteenth Amendment due process violation and its request for summary judgment on the issue of qualified immunity for hospital officials.

DISCUSSION

A motion for reconsideration may be reviewed under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment). *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). Under Rule 59(e), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* at 1263; *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). Rule 60(b) allows a district judge to provide

relief from a final judgment if the moving party can show

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. Pro. 60(b). Whether to grant a motion for reconsideration is within the sound discretion of the court. *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). The Ninth Circuit has held that

> A district court does not abuse its discretion when it disregards legal arguments made for the first time on a motion to amend, and a party that fails to introduce facts in a motion or opposition cannot introduce them later in a motion to amend by claiming that they constitute "newly discovered evidence" unless they were previously unavailable.

*Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (internal citations omitted). Reconsideration is also properly denied when a litigant "present[s] no arguments in his motion for [reconsideration] that had not already been raised in opposition to summary judgment." *Taylor v. Knapp,* 871 F.2d 803, 805 (9th Cir. 1989).

///

///

ORDER DENYING MOTION FOR RECONSIDERATION ~ 3

### A. Deprivation of a Tangible Interest

Defendant first requests reconsideration of the Court's ruling that due process protections are triggered when an employer makes a charge of dishonesty or attaches stigma to an employment decision, arguing that because there is no "stigma-plus" here, King's due process claim should be dismissed. ECF No. 102 at 3.

The Court declines to reconsider its ruling because GCHD again misstates the legal standard. As clearly stated in the Order Re: Pending Motions, ECF NO. 101 at 23, in the public-employment context an employee may claim the right to a name-clearing hearing if "1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by law." *Llamas v. Butte Cmty. Coll. Dist.,* 238 F.3d 1123, 1129 (9th Cir. 2001). Defendant argues that something more than defamation by a state official must be involved to establish a due process claim—"stigma-plus," citing *Paul v. Davis*, 424 U.S. 693 (1976). The stigma-plus requirement is appropriate in situations like that in *Paul*, which involved police officials' distribution of a flyer stating that plaintiff had shoplifted. But as the *Paul* court went on to explain, citing public employment, "it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had

to occur in the course of termination of employment." *Id*. at 710 (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972) ("[The State] did not base the nonrenewal of [Plaintiff's] contract on a charge, for example, that he had been guilty of dishonesty or immorality. Had it done so, this would be a different case. For '(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' In such a case, due process would accord an opportunity to refute the charge…."). Thus, the standard for public employment is defamation *plus* the requirement that the defamation occur in the course of termination. There is no question that King was terminated; thus, contrary to GCHD's argument, there is "stigma plus."

**B. The Three-Prong Test**

Defendant next requests reconsideration of the determination that the three defamatory events considered (1) were publicly disclosed, (2) were false, or (3) occurred in the course of termination, as required. ECF No. 102 at 4. Defendant argues (1) that the termination letter was not publicly disclosed, and that it was not substantially false, (2) that the statement in the NCQAC complaint was not false, and (3) that the Tuvey letter was too temporally attenuated to qualify for consideration. The Court addresses each contention in turn.

///

**The termination letter.** Defendant argues that the undisputed evidence shows that documents related to King's positive test results were maintained in confidential files at GCHD. ECF No. 102 at 7. Defendant appears to contend that the letter was not published in satisfaction of the first prong of the three-prong test enumerated above. *Id.*

The Court disagrees. As discussed in the Court's order on GCHD's motion for summary judgment, GCHD is a public employer, subject to the Washington Public Records Act ("PRA"), RCW 42.56, et seq. *See Progressive Animal Welfare Soc. v. Univ. of Washington*, 125 Wash. 2d 243, 250 (1994) (the act requires all state and local agencies to disclose any public record upon request). "Washington's public records act…is a strongly worded mandate for broad disclosure of public records." *Limstrom v. Ladenburg*, 136 Wash. 2d 595, 603 (1998). Under the PRA, "[e]ach agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within" an exemption. RCW 42.56.070. As the Court stated in its order, the Ninth Circuit makes clear that "absent expungement, placement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classifies an employee's personnel file as a public record." *Cox v. Roskelley*, 359 F.3d 1105, 1112 (9th Cir. 2004). The Washington PRA provides for the disclosure of such personnel files. *Cox v. Roskelley*, 359 F.3d at 1111.

ORDER DENYING MOTION FOR RECONSIDERATION ~ 6

Defendant contends that because in *Cox v. Roskelley* the parties agreed that the letter was public record under Washington law, the case is distinguishable. GCHD also cites—without explanation as to how they apply—RCW 42.56.050, .230(3), and .360 for its contention that the termination letter is not subject to public disclosure. The Court finds these arguments unpersuasive. RCW 42.56.230 provides a disclosure exemption for "[p]ersonal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy…." RCW 42.56.230 (provision unaltered by enacted legislation WA LEGIS 142 (2014), 2014 Wash. Legis. Serv. Ch. 142 (S.B. 6522)). The PRA's privacy provisions state:

> A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) *is not of legitimate concern to the public*.

RCW 42.56.050 (emphasis added).[1] Thus, in order for personal information in employee files to be exempt from disclosure, it must "violate their right to

---

[1] As for the last PRA provision GCHD cites, RCW 42.56.360—including any amendments reflected in enacted legislation recorded at 2014 Wash. Legis. Serv. Ch. 223 (S.S.H.B. 2572)—contains provisions regarding the disclosure of health care information; the connection to the instant case is unclear, and GCHD has made no effort to explain it.

ORDER DENYING MOTION FOR RECONSIDERATION ~ 7

privacy." *See* RCW 42.56.230. To violate an employee's right to privacy, disclosure of information must not only be "highly offensive to a reasonable person," it must also be "not of legitimate concern to the public." *See* RCW 42.56.050. Here, disclosure of termination due to a positive drug test is certainly "highly offensive to a reasonable person," but it is also certainly of legitimate concern to the public, where the employee is a nurse—with access to narcotics—in a public hospital. Thus, in the light most favorable to the Plaintiff—as the summary judgment standard requires—the termination letter is not subject to the PRA's exclusion and, under *Cox v. Roskelley*, is published for the purposes of triggering a name-clearing hearing.

GCHD also contends that the letter does not meet the falsity requirement. ECF No. 102 at 8. The Court disagrees. The termination letter states that King was terminated for "failure to comply with Section 3.16 of the employee handbook Substance Abuse and Testing" and that the "reasonable suspicion test that was performed on 2/11/11 was found to have positive test results for Opiates of Codeine and Morphine." ECF No. 73-25 at 2. GCHD contends that King was terminated because he tested positive for opiates, in violation of the handbook provision; thus, nothing in the letter is false. While King does not dispute that his test was positive, he does dispute that his positive test result is due to his misconduct, which the letter certainly implies by its reference to his violation of

ORDER DENYING MOTION FOR RECONSIDERATION ~ 8

the handbook provisions and "reasonable suspicion test." Accordingly, *in the light most favorable* to the Plaintiff, the accuracy of the charge is contested, and Defendant has failed to demonstrate that the Court manifestly erred on this issue.

Defendant also argues that the Court's determination that qualified immunity should be denied because the termination letter was placed in King's file was manifest error, or at minimum presents a question of law under Washington's Public Records Act. ECF No. 102 at 7. This was precisely the issue and Washington statute addressed in *Cox v. Roskelley*, in which the Ninth Circuit affirmed the district court's denial of qualified immunity, holding "that the contours of the right to a name-clearing hearing upon placement of stigmatizing material in a personnel file were clearly established, such that a reasonable official in these defendants' position would have known that his conduct was unlawful." 359 F.3d at 1113. Accordingly, this argument fails as well.

**The NCQAC Complaint.** Defendant contends that Court erred in finding that the true statements giving rise to a negative inference can trigger due-process rights. ECF No. 102 at 4.

As explained in the Court's order on GCHD's motion for summary judgment, the accuracy of the charge must be contested. *Llamas.*, 238 F.3d at 1129. "If the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged

ORDER DENYING MOTION FOR RECONSIDERATION ~ 9

1  employee which has some significant bearing on the employee's reputation." *Codd*
2  *v. Velger*, 429 U.S. 624, 627 (1977).

3     Defendant argues that the fact that each individual statement in the NCQAC
4  complaint was true forecloses King from using the complaint as a basis for seeking
5  a name-clearing hearing. ECF No. 102 at 4. GCHD reported to the Nursing Care
6  Quality Alliance that the long-term care nurses were tested "for reasonable
7  suspicion of narcotic diversion related to incorrect narcotic count," and that King's
8  test results were positive, though GCHD was "[u]nable to prove actual patient
9  diversion." ECF No. 73-27 at 3. The form also specifies that King was terminated.
10 *Id*. The Court reiterates that while the very brief statements contained in the
11 NCQAC complaint are not necessarily individually contested, they create a strong
12 inference that King was terminated as a result of the positive test results and
13 suspected diversion, particularly since there is no other suggestion of why he was
14 terminated. Furthermore, the factual dispute turns on a very fine distinction: King
15 does not dispute that he took a prescription medication that may have resulted in a
16 positive test for opiates, but he does dispute that his positive test result should be
17 imputed to drug diversion or another improper source. Thus, King does dispute the
18 "substantial truth" of the clear inference of the statements. In the light most
19 favorable to Plaintiffs, the Court must decline to reconsider its denial of summary
20 judgment on this issue.

ORDER DENYING MOTION FOR RECONSIDERATION ~ 10

**The Tuvey Letter.** GCHD contends that the Court erred in finding that that hospital administrator Dale Tuvey's letter in support of GCHD's position in King' unemployment benefits hearing was not too attenuated to meet the temporal nexus requirement. ECF No. 102 at 8.

"[T]here must be some temporal nexus between the employer's statements and the termination. *Campanelli v. Bockrath,* 100 F.3d 1476, 1479, 1483 (9th Cir.1996). The *Campanelli* court refused, however, to adopt a bright line rule "that defamatory statements made by an employer any time after the date of termination are not made 'in the course of the termination.' " *Id.* at 1482. Instead, the court held that the statements must be "so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." *Id.*

GCHD cites several cases for the proposition that four months is too attenuated; the Court finds these cases unpersuasive. *See Tibbetts v. Kulongoski*, 567 F.3d 529, 536 (9th Cir. 2009) (finding that defendant should be granted qualified immunity because at the time the stigmatizing press release issued, a reasonable person in defendant's position "could not have known by recourse to then-extant case law whether a stigmatizing statement made nineteen days after Plaintiffs' termination would violate *Campanelli*'s 'temporal nexus' test."); *Bishop v. Wood*, 426 U.S. 341, 348-49 (1976) ("the asserted reasons for the City Manager's decision … were stated in writing in answer to interrogatories after this

ORDER DENYING MOTION FOR RECONSIDERATION ~ 11

litigation commenced…. [S]ince the latter communication was made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim. A contrary evaluation of either explanation would penalize forthright and truthful communication … between litigants…."). Here, the question is not—as it was in *Tibbetts*—whether the right to a name clearing hearing is clearly established by a press release issued 19 days after termination. Nor is a statement during the course of an unemployment hearing the same as answers to interrogatories in litigation over the very issue before the court.

Nor has Ninth Circuit foreclosed the possibility that stigmatizing statements could occur after termination. *See Campanelli,* 100 F.3d at 1483. Thus, the out-of-circuit cases Defendant cites in support of that proposition are likewise unpersuasive. *See, e.g., Albamonte v. Bickley*, 573 F. Supp. 77, 81 (N.D. Ill. 1983); *Gentile v. Wallen*, 562 F.2d 193, 197-98 (2d Cir. 1977). Accordingly, Defendant has not demonstrated that the Court erred in finding that, under *Campenelli*, four months was not too attenuated under the facts of this case. At this stage of the proceeding, the Court must look at the evidence in the light most favorable to the Plaintiff.

///

///

### C. Adequacy of the Pre-Termination Hearing

Defendants argue that the Court erred in concluding that the February 22, 2011, pre-termination meeting GCHD had with King did not satisfy due process requirements for a name clearing hearing. ECF No. 102 at 11. GCHD contends that though Dr. McGee did not issue its final determination until March 24, 2011, King had been informed that his test results showed an unacceptable level of opiates and that his continued employment depended on the final laboratory results and interpretation by Dr. McGee. *Id.* at 12. GCHD also argues that the name-clearing hearing need not take place after the damaging statements were made. *Id.*

These arguments are unpersuasive. As the Court already noted in its order on GCHD's motion for summary judgment,

> While King had notice that his urine drug screen would be discussed, he did not have the results from his drug test. As Plaintiffs correctly contend, without his test results, King could not adequately address the potential seriousness of the findings. Nor had GCHD at the time of the meeting made the damaging statements that form the basis for King's need to clear his name. Without these, King certainly could not have had an opportunity to clear his name.

ECF No. 101 at 33-34 (internal citations omitted). Defendants admit that Dr. McGee had not yet made his final determination at the time of the meeting, and that such a determination would form the basis of their decision. *See* ECF No. 102 at 11-12. Without the results or the decision based on the results, the

ORDER DENYING MOTION FOR RECONSIDERATION ~ 13

pretermination meeting offered no meaningful opportunity for King to clear his name, and due process requirements were not satisfied.

### D. Adequacy of the Post-Termination Procedures

Next, Defendants contend the Court erred by stating that no post-termination procedure was available to King. Defendants cite to the grievance procedure in the employees' handbook, ECF No. 66-1 at 22-23, and a series of emails to and from Mr. Craigie and Plaintiff. However, neither the grievance procedure policy nor the emails reference their applicability to a name clearing hearing.

Defendants misunderstand that the burden is on the government to "provide the person an opportunity to clear his name" with notice of the evidence adduced against him "at a meaningful time and in a meaningful manner." *See* Court's Order, ECF No. 101 at 35 (ci*ting Vanelli v. Reynolds Sch. Dist. No. 7.*).

Furthermore, "[e]ven though a post-termination hearing provides one with an opportunity to clear his name, as well as to regain any improperly withheld benefits, compensable damages may arise for mental and emotional distress arising from the initial denial of due process. *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 779 n.8 (9th Cir. 1982). This is not something unusual to the Ninth Circuit. *See Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1046 (11th Cir. 1989) ("We hold that a public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made

ORDER DENYING MOTION FOR RECONSIDERATION ~ 14

part of the public records, or otherwise published. Notice of the right to such a hearing is required.").

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant GCHD's Motion for Reconsideration (ECF No. 102) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** June 6, 2014.

THOMAS O. RICE
United States District Judge

ORDER DENYING MOTION FOR RECONSIDERATION ~ 15