1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

DENNIS KING and TRICIA KING,
husband and wife,

                              Plaintiffs,

        v.

GARFIELD COUNTY PUBLIC
HOSPITAL DISTRICT NO. 1, a
municipal corporation, et al.,

                              Defendants.

NO:  2:12-CV-0622-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

14

15

16

17

18

19

20

        BEFORE THE COURT is Garfield County Public Hospital District No. 1's

Motion for Summary Judgment Re: Municipal Liability Claim (ECF No. 127).

This matter was heard on June 15, 2016, in Spokane, Washington. Ronald A. Van

Wert and Jeffrey R. Galloway appeared on behalf of Plaintiffs Dennis and Tricia

//

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

King. Susan W. Troppmann appeared on behalf of Defendant Garfield Hospital.[1] The Court—having reviewed the briefing, files, and record therein and heard from counsel—is fully informed.

## BACKGROUND

This case concerns Plaintiff Dennis King's termination for alleged drug diversion and use after he tested positive in a drug test. King brought suit against his former employee, Garfield County Public Hospital District No. 1 ("GCHD"); several of its employees; the physician and company involved in the drug test; and OHS Health & Safety Services Inc. Specifically, King—along with his wife, Tricia King—alleged that the drug test constituted an unreasonable search and that he was deprived of his due process rights because he was not provided a name-clearing hearing in connection with his termination. Plaintiffs also asserted several state law violations. ECF No. 33.

On May 1, 2014, this Court dismissed Plaintiffs' unreasonable search claim, as well as their state law claims against GCHD. ECF No. 101. This Court, however, denied the individual Defendants' requests for qualified immunity on Plaintiffs' remaining due process claim. *Id.*

_____

[1] Mark Louvier was present on behalf of Defendants Terrence and Kim McGee. Stephen M. Lewis was present (telephonically) on behalf of Defendant OHS.

Defendants appealed this Court's qualified immunity finding, and the Ninth Circuit reversed and remanded, holding that the individual Defendants are entitled to qualified immunity on King's due process claim. ECF No. 119. As a result, this Court dismissed Defendants Craigie, Morrow, and Beehler from this suit. ECF No. 123. Plaintiffs' surviving claims allege (1) that GCHD violated King's due process rights, and (2) that Terrence Sean McGee, M.D., and OHS Health & Safety Services were negligent.

In the instant motion, GCHD moves for summary judgment on the remaining due process claim. ECF No. 127. GCHD asserts that liability is precluded under the law of the case doctrine and that Plaintiffs' theories of municipal liability do not otherwise create a genuine issue for trial. *Id.*

For the foregoing reasons, this Court finds liability on Plaintiffs' due process claim is precluded by the law of the case. Alternatively, this Court finds no reasonable jury could find in Plaintiffs' favor on the various theories of municipal liability. Accordingly, GCHD is entitled to summary judgment and is dismissed from this suit.

//

//

//

//

# FACTS

The following are the undisputed material facts unless otherwise noted.[2]

## A. Termination of King

Dennis King was hired by GCHD as a registered nurse on March 2, 2007, and served in an at-will position until his termination on March 29, 2011. ECF Nos. 130 ¶ 10; 132 ¶ 2.

On February 1, 2011, King had a tooth extracted, which extraction resulted in a painful bone spur. ECF No. 132 ¶ 9. King's dentist prescribed him Tylenol #3, which contains codeine, to relieve the pain. *Id.* ¶ 10.

---

[2] For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2); *see also* L.R. 56.1(d) ("[T]he Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth [in the non-moving party's opposing statement of facts]"). Here, Plaintiffs filed a statement of facts in support of their opposition to GCHD's summary judgment motion but failed to directly address or rebut Defendant's statement of facts. *See* ECF No. 132.

On February 10, 2011, King received a call to report to GCHD for a mandatory meeting the following morning, which meeting was actually an unscheduled drug test due to suspected drug diversion by a hospital employee. *Id.* ¶¶ 12, 14. On February 11, 2011, King participated in the drug test, and the King's urine sample subsequently tested positive for codeine and morphine. ECF Nos. 130 ¶ 15-16; 132 ¶ 17, 19. King was subsequently informed that the results of his drug test revealed elevated levels of opiates and that his employment could be terminated "pending further testing results."[3] ECF No. 130 ¶ 17

On March 29, 2011, GCHD terminated King's employment based on the positive drug test result. *Id.* ¶ 18. Andrew Craigie, GCHD's Superintendent, was aware of and approved King's termination. ECF Nos. 130 ¶ 19; 132 ¶ 25.

**B. GCHD Governing Structure**

GCHD is a public hospital and municipal corporation, ECF Nos. 130 ¶ 1; 132 ¶ 3, and is governed by an elected Board of Commissioners, ECF No. 130 ¶ 2; RCW ch. 70.44. Pursuant to its bylaws, the Board is responsible for establishing

---

[3] GCHD's drug policy states, in relevant part, that "[a]n employee will be subject to appropriate disciplinary action up to and including termination from employment if . . . [t]he employee tests positive for drug or drugs." ECF No. 130 ¶ 14 (citing ECF No. 128-2 at 22).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

policies for the hospital, including policies regarding the hiring and termination of its employees. ECF Nos. 130 ¶ 3; 132-1 at 3; *see* ECF No. 128-2 at 3 ("The Board shall establish policies relating to the affairs of the District . . . .").

At all relevant times, Andrew Craigie was GCHD's superintendent and Chief Executive Officer. ECF Nos. 130 ¶ 4; 132 ¶ 4. Plaintiffs contend Craigie had policymaking authority with respect to hiring and terminating GCHD employee. ECF No. 132 ¶ 23 (citing Craigie Deposition, ECF No. 132-1). While the Board delegated certain powers to Craigie and Craigie indisputably "had a hand in" formulating some of the hospital's policies and creating the employee handbook, GCHD asserts that Craigie did not have the authority to establish or revise employment policies absent Board approval. ECF No. 130 ¶¶ 8-9; *see* ECF No. 132-1 at 5 (Craigie Deposition) (testifying that he "had a hand in formulating some of the policies of the hospital . . . [and] creating the employee handbook," and would "help establish" GCHD's policies in his role as CEO).

Importantly, the employment policies in effect during King's employ and at the time of his termination, were approved and adopted by formal motion of the Board on October 7, 2009. ECF No. 130 ¶ 11. While GCHD's employment policy makes no express mention of the opportunity for a name-clearing hearing for its employees who suffer termination, it does provide employees the opportunity to "[a]ppeal an unsatisfactory CEO decision to the Board." ECF No. 128-2 at 24.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

# DISCUSSION

## A. Standard of Review

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)). Further, only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

### B. Law of the Case

GCHD first asserts that liability on Plaintiffs' sole remaining section 1983 claim is precluded by the law of the case doctrine. ECF No. 127 at 3-5. In short, GCHD argues that because the Ninth Circuit found that King had been provided

1  sufficient due process, it decided explicitly or by necessary implication that there

2  was no constitutional injury and thus no underlying basis for municipal liability.

3  *Id.* In response, Plaintiffs disagree that the Ninth Circuit ever ruled on whether

4  there was a constitutional injury and instead assert that the appellate court's

5  holding rested on the lack of clearly established law putting Defendants on notice

6  that King was entitled to greater process than actually afforded. ECF No. 131 at 4-

7  6. Plaintiffs agree that the Ninth Circuit was asked to address both prongs of the

8  qualified immunity analysis—(1) whether the Defendants' conduct violated a

9  constitutional right and (2) whether the right was clearly established—but that it

10  merely addressed the second prong of the analysis. *Id.*

11       When addressing the defense of qualified immunity, a court asks two

12  questions: (1) "whether the officer in fact violated a constitutional right," and (2)

13  "whether the contours of the right were sufficiently clear that a reasonable official

14  would have understood that what he is doing violates that right." *Mullenix v. Luna*,

15  136 S. Ct. 305, 313-14 (2015) (internal quotation marks, brackets, and citations

16  omitted). The distinction argued by the parties—that is, whether the Ninth Circuit

17  addressed both prongs or just the latter—is important because while "[q]ualified

18  immunity [of the individual officials] does not shield municipalities from liability,"

19  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011), a municipality

20

1    cannot be liable where there has been no constitutional injury in the first instance,

2    *Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015).

3         Under the law of the case doctrine, "a court is generally precluded from

4    reconsidering an issue previously decided by the same court, or a higher court in

5    the identical case." *United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir.

6    2014) (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir.

7    2000)). "For the doctrine to apply, the issue in question must have been decided

8    explicitly or by necessary implication in the previous disposition." *Id.* (quoting

9    *Lummi Indian Tribe*, 235 F.3d at 452) (emphasis omitted). The doctrine "expresses

10   the practice of courts generally to refuse to reopen what has been decided." *United*

11   *States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010) (citation omitted).

12        This Court finds the law of the case doctrine precludes finding GCHD liable.

13   In reversing this Court's qualified immunity ruling as to the individual hospital

14   employees, the Ninth Circuit primarily focused on the lack of clearly established

15   law putting Defendants on notice that King was entitled to more process than he

16   received, which "clearly established law" is one prong of the qualified immunity

17   analysis. ECF No. 119 at 2. However, the Ninth Circuit also appears to have

18   addressed the absence of a constitutional violation, the other prong of the qualified

19   immunity analysis. The Ninth Circuit expressly found King's "arguments that [he]

20

was not provided sufficient process . . . not persuasive." *Id.* at 4. Specifically, the

Ninth Circuit highlighted the following:

> Before the termination, Defendants provided Plaintiff with notice that the presence of drugs in his sample could result in termination under hospital policy. Plaintiff had an opportunity to explain the drug test result at a lengthy meeting with three hospital administrators and the medical review officer who interpreted the drug test results. He also had ample opportunity (a period of several weeks) to submit additional documentation explaining the presence of drugs in his sample, following the meeting and before his eventual termination. Indeed, he took advantage of that opportunity.

*Id.* at 3. While Plaintiffs are justified in asserting that the Ninth Circuit's ruling

primarily focused on the clearly-established prong of the analysis, it is difficult to

find the Court did not, at least by implication, hold that the process afforded by the

individual Defendants was constitutionally sufficient and thus that there was no

underlying constitutional violation. *See id.* at 4 ("The fundamental requirement of

due process is the <u>opportunity</u> for and individual to be heard at a meaningful time

and in a meaningful manner." (internal quotation marks and citation omitted)). The

Court cannot read the above-cited paragraph and find otherwise. Accordingly,

because there can be no municipal liability without an underlying constitutional

violation, *Yousefian*, 779 F.3d at 1016, Defendants are entitled to summary

judgment on this basis.

//

//

**C. Section 1983 Claim**

Even assuming the law of the case doctrine is inapplicable and the adequacy of process remains an open question, King's due process claim against GCHD cannot survive summary judgment on any theory of municipal liability asserted.

**1. Due Process**

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. "Due process 'is a flexible concept that varies with the particular situation.'" *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted)).

"[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1971). In the case of a terminated employee whose liberty interest has been implicated, such an employee has a right to a "name-clearing" hearing or similar process to refute any stigmatizing charge and clear his name. *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004); *see Codd v. Velger*, 429 U.S. 624, 627 (1977)

(noting that the purpose of a name-clearing hearing in the case of a *non-tenured* government employee "is solely to provide the person the opportunity to clear his name").

This Court previously found that King was entitled to a name-clearing hearing in connection with his termination but was not provided one, either pre- or post-termination. ECF No. 101 at 33. The question then becomes whether GCHD, as a municipal corporation, can be held liable for this constitutional violation.

### 2. Municipal Liability

To establish a section 1983 claim, a claimant must prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). The Supreme Court has held that local governments are "persons" who may be subject to suit under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). However, [p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell*, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

of law." *Id.* "In limited circumstances, a local government's decision not to train

certain employees about their legal duty to avoid violating citizens' rights may rise

to the level of an official government policy for purposes of § 1983." *Id.*

As the Supreme Court articulated in *Monell*, the purpose of the "official

municipal policy" requirement is to prevent municipalities from being held

vicariously liable for unconstitutional acts of their employees under the doctrine of

respondeat superior. *Monell*, 436 U.S. at 690-93; *see also Pembaur v. City of

Cincinnati*, 475 U.S. 469, 478-79 (1986). Thus, the "official municipal policy"

requirement "distinguish[es] acts of the *municipality* from acts of *employees* of the

municipality, and thereby make[s] clear that municipal liability is limited to action

for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80

(footnote omitted).

Plaintiffs contend that GCHD should be liable under section 1983 because

(1) Craigie, as final policymaker for GCHD, made the decision or otherwise

ratified the decision of Morrow and Beehler to terminate King without providing

him a name-clearing hearing; and (2) GCHD's lack of any employment policy

regarding the need for a pre-termination, name-clearing hearing and its employees'

lack of training regarding the same constitutes deliberate indifference to King's

constitutional rights. ECF No. 131.

The success of Plaintiffs' *Monell* claims depends on the answer to two dispositive issues: (1) whether Craigie had the authority to establish final policy concerning GCHD employee terminations, and (2) whether Plaintiffs have presented evidence that GCHD was on actual or constructive notice that its lack of a policy would likely result in a constitutional violation. Because this Court finds no reasonable jury could find in the affirmative for either issue, GCHD is entitled to summary judgment.

### a.  Final Policymaker

The first issue is whether Craigie is a final policymaker for purposes of imposing *Monell* liability based on the theories of action or ratification by a final policymaker. GCHD contends that Craigie does not have final policymaking authority regarding employee termination policies. ECF No. 127 at 9-13. Rather, the Board of Commissioners retains that authority. *Id.* In response, Plaintiffs cite to Craigie's deposition for the evidentiary support that Craigie was delegated final policymaking authority by the Board and exercised the same. ECF No. 131 at 9-12.

"[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that

discretion." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 985 (9th Cir.

2002) (quoting *Pembaur*, 475 U.S. at 482-83). "The official must also be

responsible for establishing final government policy respecting such activity before

the municipality can be held liable." *Id.* (quoting *Pembaur*, 475 U.S. at 482-83). To

illustrate the difference between someone with final policymaking authority and

someone with final decisionmaking authority, the Supreme Court provided the

following example:

> Thus, for example, the County Sheriff may have discretion to hire and
> fire employees without also being the county official responsible for
> establishing county employment policy. If this were the case, the
> Sheriff's decisions respecting employment would not give rise to
> municipal liability, although similar decisions with respect to law
> enforcement practices, over which the Sheriff is the official
> policymaker, would give rise to municipal liability. Instead, if county
> employment policy was set by the Board of County Commissioners,
> only that body's decisions would provide a basis for county liability.
> This would be true even if the Board left the Sheriff discretion to hire
> and fire employees and the Sheriff exercised that discretion in an
> unconstitutional manner; the decision to act unlawfully would not be a
> decision of the Board. However, if the Board delegated its power to
> establish final employment policy to the Sheriff, the Sheriff's
> decisions would represent county policy and could give rise to
> municipal liability.

*Pembaur*, 475 U.S. at 483 n.12. "An official may be found to have been delegated

final policymaking authority where the official's discretionary decision is [not]

constrained by policies not of that official's making and . . . [not] subject to review

by the municipality's authorized policymakers." *Ulrich*, 308 F.3d at 986 (internal

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

quotation marks omitted). "[W]hether a particular official has 'final policymaking authority' is a question of state law." *Prapotnik*, 485 U.S. at 123 (emphasis omitted) (citing *Pembaur*, 475 U.S. at 483).

Pursuant to Washington State law, public district hospitals, once established, are governed by a board of elected commissioners. *See* RCW ch. 70.44. The administrative control of the hospital is then vested with the hospital's superintendent. RCW 70.44.080. In this position, the superintendent "shall be responsible to the commission for the efficient administration of all affairs of the district," *id.*, and shall "carry out the orders of the commission, and . . . see that all the laws of the state pertaining to matters within the function of the district are duly enforced," RCW 70.44.090(1). While the superintendent may attend all board meetings and take part in meeting discussions, the superintendent does not have a vote in board decisions. RCW 70.44.080(1).

Here, the Board's governing bylaws, in effect at all relevant times, expressly provide that the Board is responsible for "establish[ing] policies relating to the affairs of the District." ECF No. 128-1. The employment policies in effect during King's tenure were approved and adopted by formal motion of the Board on October 9, 2009. ECF No. 128-2. And while Craigie, superintendent and CEO of GCHD, testified that he "had a hand in formulating some of the policies of the hospital . . . [and] creating the employee handbook," and would "help establish"

1    GCHD's policies in his role as CEO, by law he does not vote at the Board's

2    meetings, RCW 70.44.080(1), nor can he establish policies for the hospital without

3    Board approval, ECF No. 132-1 at 5. Rather, Craigie is "subject to" the policies

4    established by the Board and is tasked with carrying out these policies in his

5    administrative capacity. ECF No. 128-2 at 8. In support of this theory of

6    delegation, Plaintiffs can point to nothing in the Board's Bylaws that suggests the

7    Board delegated its policymaking authority to Craigie. At most, Craigie's role in

8    approving King's termination, and by necessity the sufficiency of the due process

9    that accompanied it, was as final *decisionmaker*, not final *policymaker*. *See Delia*

10   *v. City of Rialto*, 621 F.3d 1069, 1083-84 (9th Cir. 2010) (holding that plaintiff's

11   argument "confuse[d] final decisionmaking authority with final policymaking

12   authority" and that "only the latter is sufficient to hold the City liability under

13   § 1983"), *rev'd on other grounds*, *Filarsky v. Delia*, 132 S. Ct. 1657 (2012).

14   Craigie's deposition testimony—which demonstrates that Craigie approves some

15   termination decisions in his role as CEO of hospital and as "one of the people who

16   *enforces* the policies of the hospital," ECF No. 132-1 at 3-5—does not lead to a

17   different conclusion.

18        At oral argument, Plaintiffs' counsel cited to *McKinley v. City of Eloy*, 705

19   F.2d 1110 (9th Cir. 1983), for the proposition that where the final policymaker

20   delegates to an official the ultimate responsibility for personnel decisions, that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

official's decisions represent "official city policy." This case, however, was

decided almost 3 years before the *Pembaur* Court highlighted the important

distinction between final policymaker and final decisionmaker. At any rate, Craigie

did not have "ultimate responsibility for personnel decisions." Rather, GCHD

employees, like King, retained the right to "[a]ppeal an unsatisfactory CEO

decision to the Board." ECF No. 128-2 at 24. Thus, the Board retained its ultimate

authority.

Accordingly, GCHD is entitled to summary judgment on Plaintiffs' final

policymaker theories of *Monell* liability.

### b. Deliberate Indifference

The second issue is whether Plaintiffs have presented sufficient evidence

demonstrating deliberate indifference on the part of GCHD to survive summary

judgment on their policy-of-omission and failure-to-train theories of municipal

liability. GCHD asserts that Plaintiffs have presented no evidence regarding the

termination of any other employee, much less evidence of a pattern of similar

dismissals, for purposes of demonstrating a policy of omission. ECF No. 127 at 13-

14. Moreover, GCHD contends that Plaintiffs have not presented evidence

showing that the consequences of GCHD's deficient policy were "so patently

obvious" as to amount to deliberate indifference for purposes of municipal

liability. *Id.* In response, Plaintiffs highlight the ignorance of GCHD's employees

regarding an employee's right to a name-clearing hearing and the absence of any policy concerning the same within the hospital's employee manual. ECF No. 131 at 13-17.

"Under *Monell*, a local government body can be held liable under § 1983 for policies of inaction as well as policies of action." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Id.* (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

"In inaction cases, the plaintiff must show, first, 'that [the] policy amounts to deliberate indifference to the plaintiff's constitutional right.'" *Id.* (quoting *Tsao*, 698 F.3d at 1143). "This [deliberate indifference] standard is met when 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61-62 (noting that "[a]

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train"). In other words, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson v. County of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002). "Second, the plaintiff must show 'that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Jackson*, 749 F.3d at 763 (quoting *Tsao*, 698 F.3d at 1143).

Here, viewing the evidence presented in the light most favorable to Plaintiffs, this Court finds no reasonable jury could find that GCHD acted with deliberate indifference. For one, Plaintiffs have failed to provide any evidence showing that GCHD had actual notice of any deficiencies. For instance, Plaintiffs have not presented any evidence of other similar incidents of constitutional violations such that GCHD was put on notice of the deficiency within its policy or its failure to train its employees on the requirement of name-clearing hearings. At most, Plaintiffs have presented their own speculation that such incidents occurred—"It is believed that other individuals who have been terminated by GCHD have experienced the same violation of their right to such hearing," ECF No. 129-1 at 4 (Plaintiff's Answer to Interrogatory No. 7); however, they make no argument supporting actual notice.

Further, Plaintiffs have failed to show that the consequences of GCHD's deficient policy or training regarding name-clearing hearings was "so patently obvious" as to show that GCHD had constructive notice of the deficiency in its policy. Given the flexibility of due process and the limited rights of a non-tenured employee, it is far from obvious that GCHD had to provide King a name-clearing hearing *prior* to his termination, [4] let alone what precise requirements due process

---

[4] *See Codd*, 429 U.S. at 627-28 (implying that a post-termination name-clearing hearing in the case of a non-tenured stigmatized employee is sufficient); *Segal v. City of New York*, 459 F.3d 207, 214 (2d Cir. 2006) ("We now hold that, in this case involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim . . . ."); *Hammer v. City of Osage Beach*, 318 F.3d 832, 840 (8th Cir. 2003) (holding that post-deprivation hearing fulfilled purpose of clearing aggrieved party's name); *Campbell v. Pierce County*, 741 F.2d 1342, 1345 (11th Cir. 1984) ("Because it is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests."); *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983) ("The hearing . . . is not a prerequisite to publication [of adverse material] and the state is not obliged to tender one.").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

1   would require in order for King to have the opportunity to clear his name, *Shinault*,

2   782 F.3d at 1057. Moreover, the Board, in its employee handbook, provided a

3   process arguably sufficient whereby a GCHD employee, such as King, retained the

4   opportunity to appeal any decision of the CEO to the Board. *See* ECF No. 128-2 at

5   24. In short, the need to expressly promulgate an official name-clearing hearing

6   policy or train employees on the same is not "so obvious, and the inadequacy of

7   the current procedure so likely to result in the violation of constitutional rights,"

8   that a reasonable jury could find the Board deliberately indifferent on this basis.

9   *See Clouthier*, 591 F.3d at 1249

10      Plaintiffs highlight only two types of evidence in support of their policy-of-

11  omission theory of liability: (1) deposition testimony of GCHD employees

12  expressing lack of familiarity with a *Loudermill* hearing, name-clearing hearing, or

13  due process hearing; and (2) the lack of any mention of a pre-termination, name-

14  clearing, *Loudermill*, or any similar type of hearing within GCHD's policy

15  manual.[5] ECF No. 131 at 14-18. While the question of deliberate indifference is

16  generally one for the jury, *Gibson*, 290 F.3d at 1194-95, the Court, construing the

17

18  _____

    [5] As previously noted by this Court, King was not entitled to a *Loudermill*

19  pretermination hearing because he did not have a property interest in his continued

20  employment. ECF No. 101 at 22 n. 3.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

evidence in the light most favorable to Plaintiffs, finds no reasonable jury could find in their favor based on the evidence presented.[6] Accordingly, GCHD is entitled to summary judgment on Plaintiffs' policy-of-omission and failure-to-train theories as well.

**ACCORDINGLY, IT IS ORDERED:**

1. Garfield County Public Hospital District No. 1's Motion for Summary Judgment Re: Municipal Liability Claim (ECF No. 127) is **GRANTED**.

2. The District Court Executive is directed to enter this Order, provide copies to counsel, and **TERMINATE** Garfield County Public Hospital District No. 1 from this case.

**DATED** June 27, 2016.



THOMAS O. RICE
Chief United States District Judge

---

[6] Plaintiffs provide no argument in support of the causation element of their policy-of-omission claim; thus, this Court is unable to find that a reasonable jury could find GCHD's failure to train or failure to promulgate a written policy caused King's deprivation. *Jackson*, 749 F.3d at 763.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24